**In re AM INTERNATIONAL, INC., Debtor.**

**AM INTERNATIONAL, INC., Plaintiff,**

v.

**The WELLA CORPORATION, Defendant.**

**Bankruptcy No. 82 B 4922.
Adv. No. 91 A 00099.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 10, 1992.

---

Mark E. Gralen of Schiff, Hardin & Waite, Chicago, Ill., for defendant.

David B. Love of Winston & Strawn, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on the motion of The Wella Corporation ("Wella") for summary judgment on AM International, Incorporated's ("AMI" or "Debtor") First Amended Complaint ("Complaint") for an order declaring that Wella's claim against AMI was discharged when AMI's Chapter 11 bankruptcy plan was confirmed. AMI's Complaint also seeks an injunction against the commencement of any collection proceedings by Wella. For the reasons stated herein, the court, after considering the pleadings, exhibits, affidavits,

and memoranda filed, grants Wella's motion.

## JURISDICTION

This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O). Accordingly, the court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. This motion is before the court pursuant to Local Rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

## FACTS AND BACKGROUND

The facts are not in dispute. On October 23, 1972, Wella purchased a manufacturing facility in Teterboro, New Jersey ("Teterboro Facility") from the Addressograph–Multigraph Corporation. On December 12, 1978, effective as of January 2, 1979, the Addressograph–Multigraph Corporation changed its name to AM International, Inc. by an amendment to its corporate charter. AMI commenced a bankruptcy case under Chapter 11 of the Bankruptcy Code[1] just over three years later, on April 14, 1982.

On February 24, 1983, the court set a bar date requiring all creditors to file proofs of claims against the Debtor's estate on or before May 20, 1983 whether their claims were scheduled or not. The notice of bar date was published in the Wall Street Journal on March 31, April 7, and April 15, 1983. The caption of this notice of bar date as well as the petition commencing the case and notice of confirmation hearing read as follows:

AM International, Inc., a Delaware Corporation,
Debtor.

Wella was not listed as a creditor in AMI's schedules nor was it served with a copy of AMI's Notice of Bar Date, or for that matter any other document related to AMI's bankruptcy proceeding. Wella never filed a claim in AMI's bankruptcy and the plan was confirmed on September 11, 1984 without Wella's knowledge.

1. 11 U.S.C. §§ 101—1330 (1982 & Supp.1990). All section references are to the Bankruptcy Code unless otherwise noted.

In 1988, Wella entered into a contract to exchange the Teterboro Facility for property in Virginia owned by Teterboro Ventures. Before the exchange could be made, Wella was obligated under New Jersey law to comply with the New Jersey Environmental Cleanup Responsibility Act ("ECRA"). N.J.Stat.Ann. §§ 13:1K–6 to –14 (West 1991). In the course of complying with ECRA, Wella discovered that the Teterboro Facility's soil and groundwater were contaminated with hazardous waste. On December 18, 1990 Wella filed suit against AMI in the United States District Court for the District of New Jersey seeking damages for the cost of complying with ECRA and the delay in transferring occupancy of the Teterboro Facility. (No. 90–4927). AMI filed the present adversary complaint on January 25, 1991 seeking an order declaring that Wella's claim against AMI was discharged in AMI's bankruptcy case pursuant to § 1141(d)(1) and enjoining Wella from further attempting to collect its claimed debt.

## DISCUSSION

In response to AMI's Complaint, Wella contends that it is entitled to summary judgment because AMI failed to include its prior name, Addressograph–Multigraph Corporation, in the caption of the notice of bar date as was required by the Interim Bankruptcy Rules in effect at the time of AMI's bankruptcy proceedings. Wella argues that the defect in the caption of the notice of bar date violates the Due Process Clause of the Fifth Amendment of the Constitution because it failed to give Wella reasonable notice of AMI's bankruptcy so that it could determine whether it had a claim against AMI's bankruptcy estate. In response, AMI argues that summary judgment is inappropriate because there is a genuine issue of material fact as to whether Wella knew or should have known of AMI's name change. AMI contends that if

Wella knew or should have known of AMI's name change, then the defect in the caption of the notice of bar date does not violate due process. For the following reasons, the court grants Wella's motion for summary judgment.

■ In order to prevail on a motion for summary judgment, the movant must meet the statutory requirements set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[2] Rule 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Any inferences to be made from the underlying facts of the case must be made in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015 (5th Cir.1990). Summary judgment is appropriate only if there remains no genuine issue of material fact for trial and the movant is entitled to judgment as a matter of law. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1339 (7th Cir.1985). It is not enough for the party opposing the motion to rest upon mere allegations or speculation in countering the motion. The nonmoving party must demonstrate specific facts that raise a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson* 477 U.S. at 248, 106 S.Ct. at 2510; *In re Lifchitz*, 131 B.R. 827, 831 (Bankr.N.D.Ill.1991).

**2.** In addition, a motion for summary judgment must comply with the applicable provisions of Local Rule 12. Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois requires a party moving for summary judgment to file a detailed statement of material facts as to which there is no genuine issue. Rule 12(n) in turn requires the party opposing the motion to file a statement of material facts as to which there is a genuine issue.

■ Upon confirmation of a Chapter 11 plan, a debtor is discharged from any debt that arose prior to the plan's confirmation date except as is otherwise provided in § 1141(d), the plan, or the order confirming the plan. 11 U.S.C. § 1141(d). Before a debtor can obtain a discharge in bankruptcy, however, the Due Process Clause of the Fifth Amendment dictates that the debtor's creditors receive notice of the debtor's bankruptcy so that the creditors have an opportunity to make any claims they may have against the debtor's estate. 5 *Collier on Bankruptcy,* ¶ 1141.01 at 1141–14 (15th ed. 1991). Not just any notice will suffice, however. According to the Supreme Court, the notice must be:

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [citations omitted]. The notice must be of such nature as reasonably to convey the required information ... *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 [70 S.Ct. 652, 94 L.Ed. 865] (1950).

The *Mullane* notice standard was specifically adopted by the Supreme Court in a bankruptcy context in the bankruptcy of a railroad under the Bankruptcy Act of 1898 ("Act"). *New York v. New York, N.H. & H.R.R.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). Section 77(c)(8) of the Act required judges to ensure that creditors received reasonable notice of the period in which claims could be filed. *New York* at 296, 73 S.Ct. at 301. The judge in *New York* ordered actual notice to be given to creditors that had appeared in court while the other creditors had to rely on mere publication notice. The City of New York was a known creditor of the debtor that had knowledge of the debtor's bankruptcy case. New York, however, was not given actual notice of the bar date and did not make a claim against the debtor's estate.

The Supreme Court relied on its decision in *Mullane* in declaring that publication notice "is a poor and sometimes a hopeless substitute for actual service of notice. It's justification is difficult at best." *New York* at 296, 73 S.Ct. at 301. The Court

held that known creditors had a right to actual notice while publication notice was to be limited to unknown creditors. *New York* at 296, 73 S.Ct. at 301. Of particular importance to Wella's motion in this case was the Court's additional holding that New York's knowledge of the debtor's bankruptcy proceedings did not place a duty on it to inquire as to the time period within which claims were to be filed. The Court stated that "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *New York* at 297, 73 S.Ct. at 301.

■ The issue in the present case as framed by the Supreme Court's *Mullane* and *New York* decisions, is whether AMI's Notice of Bar Date was reasonably calculated to inform Wella of AMI's bankruptcy so that Wella could determine whether it held a claim against AMI's bankruptcy estate. Unlike *Mullane* and *New York,* however, this case turns on whether the *content* of AMI's notice met the requirements of due process, not whether the *type* of notice employed by AMI gave Wella adequate notice. This difference exists because the court must make all factual inferences in favor of the party opposing a motion for summary judgment, and in light of the lack of any evidence as to whether Wella was a known or unknown creditor, the court assumes for the purpose of this motion that Wella was an unknown creditor. Wella has admitted that this assumption must be made and does not contend that the type of notice used by AMI in this case was defective as it is generally accepted that publication notice to unknown creditors is constitutional. *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Instead, what Wella argues is that AMI's notice was constitutionally defective under the Due Process Clause of the Constitution as a matter of law because the content of its caption violated Interim Bankruptcy Rules 2002(c), (i) and 1005.

Interim Bankruptcy Rule 2002(c) provides that "... the clerk of the Bankruptcy Court shall give notice by mail to ... all creditors ... of (2) ... the time allowed for filing claims ..." Interim Bankruptcy Rule 2002(i) in turn specifies that "[t]he caption of every notice given under this rule shall comply with Rule 1005." Interim Bankruptcy Rule 1005 states:

"The caption of a petition commencing a case under the Bankruptcy Code shall contain the name of the court, the title of the case, and the docket number. The title of the case *shall include the name of the debtor and all other names used by him within 6 years before the filing of the petition....*" Advisory Committee on Bankruptcy Rules, *Interim Bankruptcy Rules and Forms Manual*, (Hon. William L. Norton ed. 1979) (emphasis added).

Interim Bankruptcy Rule 1005 carefully details what must be included in the caption of notices because the accuracy of the caption is of substantive importance in bankruptcy cases. *In re Austin*, 46 B.R. 358, 360 (Bankr.E.D.Wisc.1985). It is the caption which informs creditors of exactly who has commenced a bankruptcy case so that the creditor has an opportunity to determine whether they have a claim against the debtor's estate. *Austin* at 360.

The caption requirements of Federal Rule of Bankruptcy Procedure 1005, the relevant portion of which is substantively identical to Interim Bankruptcy Rule 1005, are strictly enforced by bankruptcy courts. As a result of defects in the captions of notices of bar dates, courts have allowed claims to be filed even after the bar date has passed. *In re Sleepy Giant*, 120 B.R. 6 (Bankr.D.Conn.1990); *In re Gamble*, 85 B.R. 150 (Bankr.N.D.Ala.1988). In *Sleepy Giant*, the debtor changed its name from Original Sleepy Giant, Inc. to Sleepy Giant, Inc. within six years of filing a Chapter 11 petition. The debtor listed the State of Vermont as a creditor and sent the State notice of the bar date but failed to include Sleepy Giant's previous name in the notice's caption violating Bankruptcy Rule 1005. Vermont received the debtor's notice but did not file a claim because its records showed no claim against "Sleepy Giant, Inc." The bankruptcy court determined that the debtor's violation of Bankruptcy Rule 1005 was sufficient to establish cause and excusable neglect on the part of Vermont and therefore granted an extension of time within which Vermont was permitted to file its claim pursuant to Bankruptcy Rule 3003(c)(3).

*In re Gamble* is a similar case where the debtor commenced a Chapter 13 case with a caption that listed the debtor as Eula Kyle Gamble. The debtor, however, had a Mastercard and Visa credit card issued to her under the name Eula M. Kyle. The creditor who issued the credit cards received notice of the bar date but did not file a claim because it had no account under the name listed in the caption. The bankruptcy court determined that the creditor's claim was not discharged by completion of the debtor's Chapter 13 plan because the debtor's violation of Bankruptcy Rule 1005 precluded reasonable notice to the creditor of the debtor's bankruptcy case.

AMI does not dispute the fact that the captions of its notices in its bankruptcy case failed to meet the requirements of Interim Bankruptcy Rules 2002(c), (i) and 1005. Instead, AMI argues that its notice was adequate to inform Wella of AMI's bankruptcy because Wella knew or should have known of AMI's name change and that knowledge excuses the defects in the caption of AMI's notices. AMI's argument fails, however, because first, AMI has failed to support its contention that Wella knew of its name change with any evidence and second, the adoption of a "should have known" standard of knowledge to determine adequacy of notice would redistribute the duties of the creditor and debtor set by the Supreme Court in *New York v. New York, N.H. & H.R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

To support its allegation that Wella knew of its name change, AMI has submitted various articles that report AMI's name change and appeared in publications to which directors of Wella subscribed. However, there is no evidence that any of the directors and officers of Wella had actual

knowledge of the name change. In fact, every Wella executive denied knowledge of AMI's name change in their depositions. AMI suggests that the existence of these articles alone is sufficient to support an inference by the court that Wella executives had actual knowledge of AMI's name change but have since forgotten. Such an inference can not be made from the evidence in this case. In order to counter a motion for summary judgment, the non-moving party must present specific facts that raise a genuine issue of fact. *In re Lifchitz*, 131 B.R. 827, 831 (Bankr.N.D.Ill. 1991). Here, AMI's allegations of actual knowledge on Wella's part are mere speculation insufficient to counter Wella's denials of actual knowledge and avoid summary judgement.

AMI's argument that its notices were adequate to inform Wella of its bankruptcy because Wella should have known of the name change given the existence various articles in publications subscribed to by Wella executives also fails. Adopting a "should have known" standard would place burdens on a debtor's creditors that the Supreme Court was unwilling to adopt in *New York*. As described above, the Supreme Court dismissed the debtor's argument in *New York* that its failure to give a known creditor actual notice was excused because the creditor was aware of the debtor's bankruptcy. While the facts of *New York* differ from this case, the Supreme Court's determination that it is the debtor's duty to notify creditors of its bankruptcy and a creditor's right to rely on such notices without any corresponding burden is applicable to the facts of this case. Before AMI can receive the benefits of the Bankruptcy Code's discharge, it is AMI's burden to give adequate notice of its bankruptcy to its creditors. *Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657–658; *In re Eliscu*, 85 B.R. 480 (Bankr.N.D.Ill.1988). Adopting a "should have known" standard would excuse noncompliance with the Bankruptcy Rules and burden Wella with making the connection between AM International, Inc. and Addressograph–Multigraph Corporation when Interim Bankruptcy Rules

2002(c), (i) and 1005 have already placed that duty on AMI.

The specific duties placed on creditors by the Interim Bankruptcy Rules with regard to notices constitute Congress' determination regarding what information is required in a notice's caption in order to satisfy the Due Process Clause. As a matter of law, a notice that does not contain the information delineated in the Bankruptcy Rules is not reasonably calculated to inform creditors of a debtor's bankruptcy. The court declines to adopt the objective knowledge standard suggested by AMI and finding no question of material fact, holds that as a matter of law, AMI's notice of bar date was not reasonably calculated to inform Wella of the time in which it was required to file claims.

### CONCLUSION

For the foregoing reasons, Wella's motion for summary judgment on AMI's Complaint is granted.