## In re DESERT VILLAGE LIMITED PARTNERSHIP, Debtor.

### No. 03–33228.

United States Bankruptcy Court, N.D. Ohio.

Jan. 9, 2006.

John J. Hunter, Jr., Toledo, OH, for debtor.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Objection by the Debtor–in–Possession to the claim of Plante & Moran, LLP. At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to give the matter further consideration and throughly review the evidence presented in this case. The Court has now had this opportunity, and finds, for the reasons now stated, that the Objection of the Debtor–in–Possession should be Sustained in Part.

In April of 2003, Desert Village Limited Partnership, the Debtor–in–Possession (hereinafter "DIP"), filed a petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. Prior to the commencement of its case, the DIP had engaged Plante & Moran, LLP (hereinafter "Plante") to perform accounting services. At the time it commenced its case, the DIP set forth in its bankruptcy petition that as a result of performing these services, Plante was the holder of a claim in the amount of $60,000.00; said

claim was not listed in its petition as either disputed, contingent or unliquidated.

At the request of the DIP, a claims bar date was set for September 19, 2003. Approximately one year later, Plante filed a proof of claim, setting forth that for its prepetition services it was owed a total of $119,402.81. Shortly thereafter, the DIP filed an objection to this proof of claim. (Doc. No. 133).

## DISCUSSION

A central function of bankruptcy law is the claims allowance process. As such, the determination of objections to claims is deemed to be a "core proceeding" over which this Court has been conferred with this jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(B).

A party holding an allowed claim is entitled to share in a distribution of estate assets. Normally, the first step in the claims allowance process is for a party to file a proof of claim. However, under § 1111(a), applicable here by virtue of the DIP having commenced its case under Chapter 11 of the Code,[1] it is provided that a proof of claim is deemed filed for all claims that are listed in the debtors' schedules except to the extent that such claims are listed as disputed, contingent, or unliquidated.[2] Plante, thus, having been set forth in the DIP's petition as the holder of an undisputed, noncontingent and liquidated claim, is deemed to have filed at the commencement of this case a proof of claim in the amount of $60,000.00.

Yet, nothing prevents a creditor, such as Plante did in this matter, from filing a

proof of claim, in lieu of permitting allowance to flow from § 1111(a). The effect of such a claim, which is viewed as an amendment, rather than a newly filed claim, is to "supersede any scheduling of that claim" by the debtor in their Chapter 11 petition. FED.R.BANK.P. 3003(c)(4); *In re Sleepy Giant*, 120 B.R. 6, 8 (Bankr.D.Conn.1990). And like with any other claim, an amended proof of claim is "deemed allowed, unless a party in interest, ... objects." 11 U.S.C. § 502(a).

But once an objection is filed, it is set forth that the bankruptcy court, after notice and hearing, is to determine the validity of the claim and, if valid, the amount of the claim as of the date of the filing of the petition. 11 U.S.C. § 502(b). To this end, the DIP's objection to Plante's amended proof of claim asks that the claim "be disallowed in [its] entirety."(Doc. No. 133). Alternatively, the DIP, at the Hearing, requested that the claim of Plante be allowed in an amount less than the $119,402.81 requested.

With respect to the objection as to the validity of its claim, it is first noted that there is no dispute in this matter that Plante rendered extensive prepetition accounting services to the DIP. Rather, in attacking the validity of Plante's claim, the DIP set forth that "the services provided by Plante were not rendered in conformity with industry standards." (Doc. No. 133). At the Hearing held in this matter, the DIP elaborated further, arguing that Plante was remiss in not reinforcing to the DIP that it would be unlikely to obtain financing for the project that formed the core of its existence—that of constructing a golf course—because of a preexisting tax

---

1. 11 U.S.C. § 103(g).

2. This section provides:
   (a) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

debt. Put then in context, the DIP's argument for the complete disallowance of Plante's professional fees is one of malpractice. That is, Plante should not be allowed professional fees because its actions did not conform to the actions of a like professional.

Section 502(b) allows a court to disallow a claim in its entirety to the extent that such claim falls into one of nine specified categories. The first and most commonly utilized of such categories sets forth that a claim shall be disallowed "to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law ..." 11 U.S.C. § 502(b)(1). Under this provision, as the DIP argues, compensation for professional services, even though performed, may be entirely disallowed under applicable law if, in rendering the services, the professional committed malpractice. *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246, 1249 (1984).

As an evidentiary matter, however, the Bankruptcy Rules provide that a properly filed claim "shall constitute prima facie evidence of the validity and amount of the claim." FED.R.BANK.P. 3001(f). Consequently, with no objection being made as to its form, it is the DIP who is first charged with producing evidence sufficient to contradict the validity and/or amount of Plante's amended proof of claim. To this end, the DIP's position in support of malpractice may be framed in the vernacular as the "proof is in the pudding" argument—Plante promised to obtain financing for the DIP, but after a significant length of time and fees, never did.

In now giving consideration to the DIP's argument, it is first observed that no written agreement was produced pointing this Court to anything which would show that Plante's obtainment of financing for the golf course was to constitute the central focus of the Parties' business relationship. At the most, the facts presented show that Plante would assist in such an endeavor while contemporaneously providing general accounting services. Similarly, the DIP's related argument that Plante falsely strung the DIP along during the course of their relationship by presenting false hope of obtaining financing lacks believability. The facts and circumstances of this case show that the DIP's only principal, Jack Sparagowski, is sophisticated in business matters, and thus it becomes hard to believe that he could have been easily gulled by false promises with staying in a business relationship which, it was revealed, remained on good terms for a number of years.

Also weighing heavily against the existence of malpractice on the part of Plante is that the DIP's own expert witness, although disputing that the amount of its claim, agreed that Plante was entitled to be compensated for its services—placing the value of its claim in the neighborhood of $30,000.00 to $40,000.00. But most telling in this matter is this salient fact: the DIP listed Plante in its petition as the holder of a claim, neither disputed, contingent nor unliquidated, in the amount of $60,000.00. Ergo, why would a party who had been wronged, and when given the opportunity at the commencement of its bankruptcy case, fail to immediately (or shortly thereafter) raise such an issue, and instead opt to wait for over a year to assert its rights? Beside this *non sequitur*, functionally this also raises a couple of legal issues.

First, Bankruptcy Rule 3003(b)(1), like its counterpart in 3001(f), sets forth that the "schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of credi-

tors, unless they are scheduled as disputed, contingent, or unliquidated." Thus, by listing Plante's claim as undisputed, non-contingent and liquidated, the DIP, itself, purposefully accorded to the claim a presumption of validity. Likewise, statements contained in a debtor's petition constitute admissions under Rule 801(d)(2) of the Federal Rules of Evidence. *See, e.g., In re Arcella–Coffman,* 318 B.R. 463, 475–76 (Bankr.N.D.Ind.2004). And while a debtor is entitled to amend its schedules, statements originally set forth therein carry strong evidentiary weight. This becomes all the more true in this particular situation where more than a year passed before the DIP sought to contest the entire validity of Plante's claim.

▪ Therefore, when all things are considered, it is the finding of this Court that on the existence of malpractice on the part of the Plante, the DIP has not presented sufficient evidence to overcome the prima facie presumption of validity afforded to Plante's proof of claim. The same, however, cannot be said as to the amount set forth in Plante's amended proof of claim. Important in this respect, the dilatory conduct just ascribed to the DIP in bringing its objection, also cuts the other way.

Silence and inaction often speaks louder than affirmative acts. And here, Plante did not file its amended proof of claim until more than a full year after the DIP filed its petition, and then more than doubling its claim. Thus, the Court can't help but ask this question: if Plante thought it was owed twice that listed in the DIP's bankruptcy petition, why did it not speak up sooner? Other than a breakdown in the Parties' amicable relationship, no viable explanation was offered. The evidence, itself, also does not clear up the matter.

▪ A large part of Plante's amended proof of claim constitutes accrued interest. Yet, as previously noted, no written contract exists governing the Parties' relation-

ship. As a consequence, there is no realistic method by which this Court can even begin to attempt to compute the amount of interest which Plante asserts it is entitled to receive. Furthermore, as pointed out by the DIP, the billing statements offered by Plante lack cohesiveness, being snapshots of Plante's billing, rather than an entire historical accounting (including remittances) of those services rendered by Plante. As a result, any measure of Plante's fees beyond the $60,000.00 figure initially set forth in the DIP's petition would be the result of guesswork. The Court will, of course, not engage in such an endeavor, it being the rule that, while proofs of claim are afforded a presumption of validity, the overall burden remains on the claimant to establish the propriety of its claim. *In re Desert Village Ltd. Partnership,* 321 B.R. 443, 446 (Bankr. N.D.Ohio 2004).

In summation, the only reliable figure this Court has as to the amount of Plante's claim is that which was first set forth in the DIP's bankruptcy petition: $60,000.00. Plante will therefore be entitled to a claim against the DIP's estate in that amount. In reaching the conclusions found herein, the Court has considered all of the evidence regardless of whether it is specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Objection by the Debtor–in–Possession, Desert Village Limited Partnership, to the amended proof of claim filed by Plante & Moran, LLP, be, and is hereby, SUSTAINED IN PART.

**IT IS FURTHER ORDERED** that Plante & Moran, LLP is hereby deemed to hold an allowed unsecured claim under 11 U.S.C. § 502 in the amount of Sixty Thousand Dollars ($60,000.00).